UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILLIAN SOYOUN KIM,<br><br>      Plaintiff,<br><br>v.<br><br>FNS, INC., and LG ELECTRONICS USA, INC.,<br><br>      Defendants. | No. 22-cv-00230<br><br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jillian Soyoun Kim (Kim) brings this action against FNS, Inc. (FNS) and LG Electronics USA, Inc. (LG) under a joint employer theory, alleging employment discrimination based on sex and national origin, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended (Title VII). For the following reasons, LG's motion to dismiss is granted in part and denied in part.

**Background**

Kim, a female of Korean ancestry or national origin, was employed by FNS as a full-time branch manager from November 2018 through June 1, 2021. R.[1] 1, Compl. ¶ 17–18.[2] Kim worked at a location in Bolingbrook, IL which packaged LG mobile telephones before distribution to the market. *Id.* ¶ 9. According to Kim, FNS and LG

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.
[2] The Court accepts as true all the well-pled facts in the Complaint and draws all reasonable inferences in favor of Kim. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

are "sister companies" that are both part of the inter-related family-owned business under the LG brand. *Id.* Kim alleges that FNS and LG are located at the same address in Bolingbrook, IL, and both entities managed the operation and employees at the Bolingbrook location on a daily basis. *Id.* ¶¶ 4, 9.

Kim asserts that she was supervised by and reported to "various FNS and LG employees and both FNS and LG exercised significant control over Plaintiff such that Defendants qualify as 'joint employers' of Plaintiff under Title VII." Compl. ¶ 10. Kim alleges that Brian Kim of FNS was her direct supervisor, but that she was also managed by Kyung Chul Park of FNS, Brian Kim's supervisor, and Kyung Soo Ko, Tae Hyun Ju, Young-Ki Min, and Dong Won Lee, all of LG, during her employment. *Id.* ¶ 20. Further, Kim asserts that "almost all management employees of FNS or LG are men of Korean ancestry or national origin." *Id.* ¶ 24. Kim alleges that she was systematically denied the same terms and conditions of employment available to similarly situated Korean men. *Id.* ¶ 27–28. Kim specifically alleges that she was not paid the same salary as Korean men who were also branch managers, or provided the same bonuses and other financial benefits. *Id.* ¶ 30. Further, Kim alleges that throughout her period of employment she was "subjected to a hostile work environment with berating, shouting, harassing, and undermining her job authority by male Korean management, to which no employee that was not a Korean woman was subjected." *Id.* ¶ 31. As an example, Kim describes a situation where she reported a building ventilation issue to Kyung Soo Ko of LG. *Id.* ¶ 32. Kim alleges that she included a human resources representative on the report, and that Kyung Soo Ko

berated her for raising the issue and for including the human resources representative. *Id.* Kim further alleges that Kyung Soo Ko threatened her to not raise the issue again, and when she reported the incident to upper management, nothing was done about Kyung Soo Ko's behavior. *Id.*

Kim also alleges that employees reported to her that they were worried about her health "in light of the treatment she received and suggested that she have someone with her anytime Kyung Soo Kim wanted to talk to her." Compl. ¶ 37. As a result of her alleged treatment and her environment, Kim, at the suggestion of a human resources representative, sought out psychological treatment, which remains ongoing. *Id.* ¶ 37. Kim alleges the health care specialists advised her against returning to the work environment, "as it would be dangerous to her." *Id.* Overall, Kim describes that the alleged treatment and work environment was "degrading, humiliating, and demoralizing." *Id.* ¶ 38.

Kim also alleges retaliation. Compl. ¶ 43. In support of her retaliation claim, Kim alleges that she took medical leave due to the discrimination and harassment she was facing, and that "Defendants refused to pay her, even though male Korean employees who went on medical leave were paid." *Id.* ¶ 44. Kim does not specify in the Complaint which company refused to pay her. *See id.* Because Kim could not, as she alleges, return to the Bolingbrook location due to her treatment, her counsel advised FNS that she would being pursuing her rights with the Equal Employment Opportunity Commission (EEOC). *Id.* ¶ 45. In response, the Chief Executive Officer

3

of FNS allegedly called Kim and told her he wanted to send her to a different branch, however, Kim "could not do her job at that branch." *Id.* ¶ 45–46.

Kim also filed charges of employment discrimination based on sex and national origin with the Illinois Department of Human Rights (IDHR) against FNS and LG. Compl. ¶ 11–12. The EEOC subsequently issued Kim a Notice of Right to Sue LG and FNS. *Id.* ¶¶ 13–14.

Kim alleges that after filing her administrative charges, FNS stopped paying her premium of medical insurance, even though it continued to pay the premium for other employees, and only after she raised questions with the insurance company did FNS resume paying the premiums. Compl. ¶ 47.

LG moves to dismiss Kim's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, as a threshold matter, that the complaint fails to allege sufficient facts to establish LG as Kim's joint employer. R. 22, Memo. Dismiss at 1. Alternatively, LG argues that if Kim's Complaint does sufficiently allege that LG is her joint employer, her complaint fails to sufficiently allege her discrimination and retaliation claims against LG. *Id.*

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual

4

allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. Joint Employer

LG argues that Kim fails to allege sufficient facts to establish that LG was her employer for purposes of Title VII. Memo. Dismiss. at 3–4.

A plaintiff may pursue a Title VII claim against an entity under the theory that the entity was one of her joint employers. *Sklyarsky v. Means-Knaus Partner, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015). The Seventh Circuit has stated that, "[f]or purposes of Title VII, an employee can have more than one employer; [a]n entity can be an indirect employer or a joint employer or have some other complex combined relationship with an employee." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 905 (7th Cir. 2018) (cleaned up).[3] When multiple entities may be involved in the

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

employment relationship, the Seventh Circuit has instructed courts to apply the factors articulated in *Knight v. United Farm Bureau Mut. Ins. Co.*:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

950 F.2d 377, 378–79 (7th Cir. 1991); *see also Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015). "[T]he first of these factors—that is, the extent of the employer's control over the employee—is 'the most important consideration in ascertaining the existence of an employer-employee relationship.'" *Thomas v. Coach Outlet Store*, 2017 WL 386656, at *3 (N.D. Ill. Jan. 27, 2017) (quoting *Knight*, 950 F.2d at 378) (cleaned up)).

"The issue of whether an entity is a joint employer is generally unsuitable for resolution at the motion to dismiss stage because it involves 'a fact-intensive inquiry that typically requires further development through discovery.'" *Nor v. Alrashid*, 2022 WL 815542, at *6 (N.D. Ill. Mar. 17, 2022) (cleaned up). Therefore, courts "routinely refuse to dismiss Title VII claims at the pleading stage as long as the plaintiff's factual allegations support the theory that the defendant exercised sufficient control over the plaintiff to be her joint employer." *Id.*; s*ee also Thomas*, 2017 WL 386656, at *3 (collecting cases).

LG asserts that Kim fails to allege specific facts demonstrating that LG or an LG manager "controlled Plaintiff's work location, work assignments, evaluations or

6

performance," and that Kim's only allegation in her complaint relating to joint employment is that LG exhibited "significant control over Plaintiff." Memo. Dismiss at 4; Compl. ¶ 10.

Kim disagrees. Kim insists that she has alleged facts related supporting her theory of joint employment. Resp. at 5. Specifically, in addition to alleging that LG "exhibited significant control over Plaintiff[,]" Kim highlights the allegation that she "reported to various FNS and LG employees" and that she was "subjected to management by" several named LG employees. Resp. at 5; Compl. ¶¶ 10, 20. Additionally, Kim alleges that FNS and LG shared the same premises (*id.* ¶¶ 6, 8) that FNS and LG both managed the operations and the employees at the Bolingbrook location on a daily basis (*id.* ¶ 9), and they belonged "to a conglomerate of inter-related family-owned businesses under the LG brand." *Id.* Kim further points to the allegation that she reported an issue to LG manager, Kyung Soo Ko, as demonstrative of her reporting to and being supervised by LG managers. Resp. at 6. Kim concludes that the allegations are "enough to raise a reasonable expectation that discovery will reveal evidence" to support liability against LG. *Id.* (quoting *Adams v. City of Indianapolis*, 742 F. 3d 720 (7th Cir. 2014)).

The Court agrees with Kim. Here, Kim alleges that FNS and LG are "related companies that did business out of the same location" and that she "was supervised by, and was required to and did report to, both FNS and LG management about various issues" and thus was "subjected to the control of, both FNS and LG management." Resp. at 5–6; Compl. ¶¶ 6, 8, 9–10, 20. Kim further alleges that she

7

"reported to various FNS and LG employees," she was "subjected to management" by several LG employees, that both FNS and LG managed the "operations and employees at the Bolingbrook location on a daily basis," and that FNS and LG are "sister companies" located at on the same premises. *Id.* She also alleges that the "FNS location" where she worked "packaged LG mobile telephones that were distributed to the market" and she alleges a specific incident where she reported a ventilation issue to Kyung Soo Ko, an LG manager, and a human resources representative. *Id.* ¶¶ 9, 32. Kyung Soo Ko, according to Kim, berated her about her report and threatened her to not speak about the issue again. *Id.* ¶ 32. Afterwards, alleges Kim, she complained to both FNS and LG management. *Id.* ¶ 34.

Accepting as true the well-pled allegations in the Complaint, as the Court must at this stage, the Court agrees that Kim sufficiently sets forth allegations from which it is plausible that FNS and LG can be found to be joint employers for purposes of Kim's Title VII claims. *See Thomas*, 2017 WL 386656, at *3. Whether, in fact, LG was a joint employer, is an issue for another day.

Based on the Court's finding that Kim has included sufficient allegations in her Complaint to support that LG was a joint employer at this stage, the Court now turns to LG's motion to dismiss Kim's discrimination and retaliation counts.

## II. National Origin and Sex Discrimination Under Title VII (Count I)

LG next argues that, even if Kim's Complaint adequately alleges that FNS and LG were joint employers, her Complaint still fails to state a discrimination claim against LG. Memo. Dismiss at 5.

8

Count I of Kim's Complaint is styled as "discrimination and hostile work environment based on sex and national origin/ancestry in violation of Title VII." Compl., Count I. The Court first addresses Kim's discrimination claim, and then the hostile work environment claim.

### A. Discrimination Claim

"Title VII prohibits various 'unlawful employment practices' involving discrimination on the basis of 'race, color, religion, sex or national origin.' 42 U.S.C. §§ 2000e–2, 2000e–3." *E.E.O.C. v. CVS Pharmacy, Inc.*, 809 F.3d 335, 339 (7th Cir. 2015). Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation" because of her sex or national origin. *Kellogg v. Ball State University*, 984 F.3d 525, 528 (7th Cir. 2021). To state a claim, Kim must allege she is a member of a protected class, that she was meeting her employer's expectations, she was subject an adverse employment action, and that similarly situated employees outside of her protected category were treated more favorably. *Lauderdale v. Illinois Dep't of Hum. Servs.*, 876 F.3d 904, 910 (7th Cir. 2017). Here, Kim alleges discrimination based on two protected classes: her sex (female) and national origin/ancestry (Korean).

LG contends that Kim fails to allege that she suffered an adverse employment action, as required to state a claim under Title VII under a theory of sex or national origin discrimination. *Id*. For example, notes LG, Kim does not allege a termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other

9

indices that might be unique to a particular situation." Memo. Dismiss. At 5–6 (quoting *Porter v. City of Chi.*, 700 F. 3d 944, 954 (7th Cir. 2012)).

Instead, submits LG, Kim's claim is essentially one of constructive discharge, but she fails to plead sufficient allegations to support she was constructively discharged. Memo. Dismiss at 6; citing *EEOC v. Univ. of Chi. Hosps.*, 276 F. 3d 326, 331 (7th Cir. 2002). LG also cites the Seventh Circuit case, *Williams v. Waste Management of Illinois*, 361 F. 3d 1021, 1034 (7th Cir. 2004), for the proposition that "working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because in the ordinary case an employee is expected to remain employed while seeking redress." Memo. Dismiss at 6. LG identifies certain allegations of Kim's – including one incident where she alleges that she was "berated" and "threatened," as insufficient for an adverse action, and as not being tied to any discriminatory animus. Memo. Dismiss at 7. LG also argues that Kim's allegation of FNS not paying insurance premiums is not an adverse action for purposes of establishing a discrimination claim. *Id.* at 6 (citing *Jones v. United Airlines*, 921 F. Supp. 2d 925, 934 (N.D. Ill. 2013)). In any event, posits LG, Kim has not included any allegations that LG was involved or knew about FNS' decision not to pay insurance premiums. Memo. Dismiss at 6.

Kim responds that contrary to LG's suggestion, Title VII prohibits an employer from discriminating based upon "compensation" or the "terms, conditions, or privileges of employment." Resp. at 7 (quoting 42 U.S.C. § 2000e-2(a)(1)). Kim also argues that she alleges that she "was denied equal compensation and benefits given

10

to Korean men." Resp. at 7; Compl. 29. She also alleges that "other branch managers, including her predecessor, received bonuses and other financial benefits" that she did not receive during her employment as a branch manager. *Id.* Compl. 30. These allegations, Kim argues, are sufficient to allege a violation of Title VII. Resp. at 7.

The Court finds that Kim's pleading sufficiently places LG on notice of the sex discrimination claim against it. The Seventh Circuit has clearly and repeatedly emphasized that the pleading requirements for employment discrimination claims are minimal. *Tomayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) ("In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense."); *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017) ("The pleading requirement for employment-discrimination claims is minimal. A plaintiff need only identify the type of discrimination, when it occurred, and by whom.")

Here, Kim alleges she "was denied equal compensation and benefits given to Korean men" and that "she did not receive the same salary as Korean men in those same positions." Compl. ¶¶ 29–30. Although these allegations do not fall neatly into the description of a materially adverse action, the Seventh Circuit has made clear that there are "other indices that might be unique to a particular situation." *Porter*, 700 F. 3d at 954. The Seventh Circuit has also affirmed that an allegation that an employee is paid less than another employee outside of their protected class is an adverse action for purposes of a sex discrimination claim under Title VII. *See*

11

*Lauderdale*, 876 F.3d at 910 (employee met her initial burden for a sex discrimination claim by assertion that she was paid less than a male colleague).

Kim further alleges that Korean men branch managers "received bonuses and other financial benefits" that she did not receive during her employment as a branch manager. *Id.* at 30. In effect, Kim's claim is based upon allegations that her terms and conditions of employment, including that she was subject to different compensation, including salary and bonuses, and benefits, was due to her sex. As the Seventh Circuit has confirmed, "[e]ven a dollar's difference based on sex violates . . . Title VII[.]" *King v. Acosta Sales and Marketing, Inc.*, 678 F.3d 470, 473 (7th Cir. 2012); *see also Renken v. Illinois State Toll Highway Authority*, 2023 WL 4625520, at *3 (N.D. Ill. July 19, 2023) (quoting 42 U.S.C. § 2000e-5(e)(3)(A) ("[A]n unlawful employment practice occurs ... each time ... compensation is paid.") Thus, the Court finds Kim has stated a sex discrimination claim against LG under Title VII.[4]

Further, the Court finds that Kim has included sufficient allegations to state a claim for national origin discrimination. The crux of Kim's discrimination claim based on national origin is that Kim, as a Korean female, was paid less and treated differently by Korean male employees than she believes non-Korean male and female employees were treated. Compl. ¶¶ 29, 30, 35. Kim also includes allegations that "[b]ecause she is a Korean woman, the male Korean management expected that

---

[4] Based on this finding, the Court declines to reach LG's arguments on the sufficiency of whether Kim has adequately alleged other adverse actions, e.g. whether she was constructively discharged, or whether the failure to pay insurance premiums is an adverse action, as it is unnecessary for resolution of the motion to dismiss. LG is free to make those arguments at summary judgment upon development of the factual record.

12

Plaintiff would be subservient and docile, never questioning their management or behavior." *Id.* ¶ 22. Thus, Kim's allegations support an inference of discrimination based on her national origin at this stage.

For the foregoing reasons, the Court denies LG's motion to dismiss Count I of Kim's Complaint.

**B. Hostile Work Environment Claim**

LG also moves to dismiss Count I to the extent it includes a hostile work environment claim based on Kim's sex and national origin. Memo. Dismiss at 8.

To state a Title VII hostile work environment claim, Kim must allege "(1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or [sex] (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015).

LG argues that Kim has not met the high burden necessary for a hostile work environment claim. Memo Dismiss at 8. Kim's complaint, according to LG, focuses on one verbal confrontation, and Kim provides no link between that verbal confrontation and her sex or national origin. *Id.* LG argues that harassing and/or offensive conduct, if gender-neutral, is not actionable under Title VII. Memo. Dismiss at 8 (citing *Scott*, 2016 WL 1697779). Here, argues, LG, Kim is required to allege in more than conclusory fashion that she was subject to "hostile, intimidating, or degrading

13

behavior *because of her sex and national origin* to raise the claim above the speculative level." Memo. Dismiss at 9 (emphasis in original) (citing *Whitlow v. Bradley Univ.*, 2017 WL 522948, \*10 (C.D. Ill. Feb. 8, 2017)). Here, in a two-and-a-half year period, LG contends, Kim has only specified one event involving a building issue (ventilation), and no derogatory comments based on her sex or national origin, and these allegations fall short of plausibly stating a claim of hostile work environment. Memo. Dismiss at 9.

Kim counters that she has linked the verbal confrontation to her sex or national origin through the allegation that "no employees who are not a Korean female were subject to the hostile treatment she received." Resp. at 10; Compl. ¶¶ 31, 35. As for the case *Scott v. International Services*, relied upon by LG, that case, according to Kim is distinguishable because Kim is not asserting a sexual harassment claim, and, in any event, the court in *Scott* found the employee failed to allege the workplace conduct was directed at the employee. Memo Dismiss at 9–10. Unlike the plaintiff in *Scott*, argues Kim, she alleges that she was subject to "berating, shouting, harassing, and undermining her job and authority to which no employee that was not a Korean woman was subjected." Resp. at 11; Compl. ¶ 31. Kim contends that she is not required at the pleading stage to itemize every instance of harassment, and that she is only required to provide LG "fair notice of what the claim is and the grounds upon which it rests." Resp. at 11; citing *Huri*, 804 F. 3d at 832. Kim also disputes LG's contention that the confrontation issue involved a person who did not have termination authority over Kim as a fact issue inappropriate for evaluating at this

14

stage, and, in any event, an employee can experience harassment from co-employees. Resp. at 11–12.

The Court agrees with Kim and finds that the Complaint includes sufficient allegations to put LG on notice of the hostile work environment based on sex and national origin. The Court declines LG's invitation to evaluate the severity or pervasiveness of the complained-of conduct at the pleading stage. *See Huri*, 804 F.3d at 834 ("it is premature at the pleadings stage to conclude just how abusive [the employee's] work environment was.") Further, in considering *Scott,* the Court notes in that decision the court found the employee had, in fact, adequately alleged that complained-of conduct did create a hostile work environment, but allowed the plaintiff to re-plead given her failure to state a claim for sex discrimination. 2016 WL 1697779, at *4.

Here, Kim alleges she "was subjected to a hostile work environment with berating, shouting, harassing, and undermining her job and authority by male Korean management, to which no employee that was not a Korean woman was subjected[,]" and goes on to include an example of that treatment, and to allege that non-Korean men and non-Korean women "would not have been subject to the treatment she received by the male Korean management employees." Compl. ¶¶ 31–32, 35. Kim goes on to explain the alleged effect, seeking out medical treatment, being advised that returning to the environment "would be dangerous to her," and that the treatment was "degrading, humiliating and demoralizing." Compl. ¶¶ 37–38. Thus, Kim's allegations clear the plausibility threshold, as it provides LG of notice of her

15

claim (hostile work environment based on sex and national origin), the whom (her direct supervisors and other managers, including Kyung Soo Ko), and when (during the period of her employment), and "present[s] a story that 'holds together.'" Compl. Count I, ¶¶ 31, 39; *Huri*, 804 F.3d at 834 (citing *Swanson v. Citibank, N.A.*, 614 F. 3d 400, 404 (7th Cir. 2010)).

For these reasons, the Court also denies LG's motion to dismiss Count I of Kim's Complaint.

### III. Retaliation Claim against FNS and LG under Title VII (Count II)

Last, LG argues that Kim has failed to state a claim for retaliation against LG.

To state a claim for retaliation, a plaintiff must allege: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two. *Conner v. Bd. Of Trustees for Univ. of Ill.*, 2019 WL 5179625, at *5 (N.D. Ill. Oct. 15, 2019). What constitutes a "materially adverse action" for purposes of a retaliation claim under Title VII "sweeps more broadly than the adverse employment actions required to sustain a discrimination claim[.]" *Porter v. City of Chicago*, 700 F.3d 944, 957 (7th Cir. 2012) (cleaned up). "Protected activity" is "some step in opposition to a form of discrimination that [Title VII] prohibits." *Ferrill v. Oak Creek–Franklin Joint School District*, 860 F.3d 494, 501 (7th Cir. 2017) (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011)).

LG contends that Kim's claim against LG fails because she has not alleged that LG knew of the discrimination and failed to take reasonable corrective action within its control. Memo. Dismiss at 9 (citing *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802

16

(7th Cir. 2014)). All that Kim alleges, according to LG, is that "Defendants" refused to pay her while on medical leave. *Id*. LG argues that Kim "does not, and cannot, allege that LGEUS was specifically involved with regard to her pay during her leave, and that is unlikely given that FNS employed her and was the entity that allegedly stopped paying her health insurance premiums." *Id*. LG maintains that "Plaintiff has failed to plead facts that plausibly link any pause of her health insurance premiums with her filing of an EEOC Charge, or even any facts indicating that LGEUS was aware that her health insurance premiums were paused." Reply at 7. LG goes on to dispute that any protected activity occurred at all. *Id*.

Not surprisingly, in response, Kim insists that she has adequately pled a retaliation claim. Resp. at 12. Kim points to her allegation that after she went out on medical leave, FNS and LG refused to pay her, even though male Korean employees who went out on medical leave were paid. *Id*. Kim concedes that, at this time, she does not know who participated in the decision not to pay her, however LG has not supported its contention that Kim "cannot" allege that LG was involved in that decision. *Id*. Finally, Kim disputes the application of *Whitaker v. Milwaukee County* case as a summary judgment case with no application here. *Id*.

The Court finds that Kim has not adequately pled allegations to state a claim for retaliation against LG. Under Title VII, "protected activity" is the step opposing a form of discrimination under the statute. *Ferrill*, 860 F.3d at 501. Although Kim focuses on FNS and LG's failure to pay her when she took a medical leave, the activity of Kim taking a medical leave is not protected activity under Title VII. *See id.*

17

However, accepting the allegations in the Complaint as true, as the Court must, Kim's filing of administrative charges alleging employment discrimination is protected activity under Title VII. *See Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018) (employee engaged in statutorily protected activity by filing Equal Employment Opportunity complaints).

In Kim's Complaint, the allegations she includes *following* her protected activity of filing of administrative charges involve FNS, namely that "FNS stopped paying the premium for Plaintiff's medical insurance even though the premiums for all other employees were still being paid." Compl. ¶ 47. LG, however, maintains that Kim does not allege that LG knew that FNS was not paying the insurance premiums, and failed to take reasonable corrective action within its control. Memo. Dismiss at 9. The Court agrees that the Complaint does not contain allegations to implicate LG in the alleged retaliation. While Kim's allegations that she was not paid on medical leave, whereas male Korean employees were paid on their medical leave, may be relevant to the discrimination analysis and the terms and conditions Kim was subject to, it is not relevant to the retaliation analysis, accepting the timeline of the events as-pled by Kim in the Complaint.[5]

Thus, the Court finds Kim has failed to state a claim of retaliation against LG.

---

[5] LG also argues that failing to pay insurance premiums is not protected activity. Memo. Dismiss at 6; Reply at 7. However, as the Court is dismissing Kim's retaliation claim against LG, and those insurance premium payment allegations pertain to Kim's retaliation claim against FNS, and FNS has not moved to dismiss the Complaint, the Court declines to reach this argument.

## Conclusion

The Court grants in part and denies in part LG's motion to dismiss [21] without prejudice. The Court denies LG's motion to dismiss Count I of Kim's Complaint. The Court grants LG's motion to dismiss Count II of Kim's complaint without prejudice. The Court orders Kim to file an Amended Complaint consistent with this Opinion by September 29, 2023.

Dated: September 15, 2023

United States District Judge
Franklin U. Valderrama